O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRO SEARCH PLUS, LLC, | CASE NO. SACV 12-2102-JLS (ANx) |
| Plaintiff, | |
| vs. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |
| VFM LEONARDO, INC., | |
| Defendant. | |

This is an antitrust action involving markets for the management and distribution of images and "rich media" for hotel and travel websites, as well as the technology platform for such management and distribution.  Presently before the Court is Defendant VFM Leonardo, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint.  (Mot., Doc. 64.)  Plaintiff Pro Search Plus, Inc. opposed, and VFM Leonardo replied.  (Opp'n, Doc. 74; Reply, Doc. 75.)  Having reviewed the papers and considered the arguments of counsel at the hearing, the Court GRANTS IN PART and DENIES IN PART the Motion.

## I.     Background

### A. Online Travel Industry

When ruling on a motion to dismiss, the Court accepts as true the factual allegations in the complaint.  *See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 5 (2010).  According to the Second Amended Complaint, "the bulk of travel arrangements for airlines and lodgings are arranged electronically."  (Second Amended Complaint ("SAC") ¶ 9, Doc. 59.)  Any hotel that wants to advertise or distribute visual and rich content through an online travel agency must use an intermediary such as a Global Distribution System or Pegasus.  (*Id.* ¶¶ 9, 11-12.)  A Global Distribution System is an "electronic reservation network that acts as a single point of access for online travel bookings by [online travel agencies], booking sites, and large corporations."  (*Id.* ¶ 11.)  "Pegasus is the sole content and information aggregator in the travel industry, and used by the major [online travel agencies], including Expedia, Orbitz, and Priceline."  (*Id.* ¶ 12.)  All major hotels display still photographs and videos or virtual tours on Pegasus and Global Distribution Systems for use by online travel agencies.  (*Id.* ¶ 13.)

### B.  Parties and Markets

Pro Search alleges that VFM Leonardo ("VFML") "is the dominant provider of production, collection, management, and distribution [of] digital photos and rich media for, *inter alia*, hotels and hotel group websites, all four Global Distribution Systems . . .

2

Pegasus, all major online travel agencies . . . online travel sites, and search engines in the United States."  (Id. ¶ 7.)  Pro Search is VFML's main competitor.  (*Id.* ¶¶ 15, 17.)

Pro Search competes with VFML in the following markets: (1) "the market for provision of a [d]igital [a]sset [m]anagement technology platform to process and manage digital photographs and rich content" ("Technology Platform Market"); (2) "the market for management and distribution of digital photographs to [online travel agencies]" ("Photo Distribution Market"); and (3) "the market for management and distribution of rich media content to [online travel agencies]" ("Rich Content Distribution Market") (collectively, "Product Markets").  (*Id. ¶¶* 1, 6-7, 31.)

VFML has a market share of approximately 70% of the Technology Platform Market, approximately 90% of the Photo Distribution Market, and approximately 80% of the Rich Content Distribution Market.  (*Id.* ¶¶ 32, 35, 39.)  Pro Search is the only "actual and potential" competitor of VFML.  (*Id.* ¶¶ 33, 36, 40.)  VFML reduced competition in the Product Markets by acquiring VFML's "only significant rival in the Photo Distribution Market," and settling with another competitor in the Product Markets, resulting in that competitor's "market withdrawal."  (*Id.* ¶¶ 45, 47, 88-89.)

### C. Anticompetitive Conduct

Pro Search alleges that VFML monopolizes the Product Markets by means of exclusive dealing and tying arrangements with Pegasus, the four primary Global Distribution Systems, online travel agencies, and the major hotel groups.  (*Id.* ¶¶ 44, 48-59.)  There exists *de facto* exclusivity because dealing with VFML is an economic necessity, and the cost of switching to a competitor is prohibitive in light of VFML's monopolies.  (*Id.* ¶¶ 69-76.)  The arrangements are also alleged to unlawfully tie content distribution and VFML's distribution platform to VFML's exclusive right to distribute the content.  (*Id.* ¶¶ 77-85.)

According to Pro Search, "[Global Distribution Systems] and their [online travel agencies] want but are precluded from the benefits of getting more content choice through

3

multi-sourcing from competing distributors . . . ."  (*Id.* ¶ 72.)  If a Global Distribution System were to terminate its agreement with VFML, "it would face prohibitively high 'switching costs' in trying to replace or replicate the lost VFML content and distribution platform . . . . because VFML would cut them off from access to the necessary VFML-controlled content and the distribution platform, seriously disabling if not destroying that [Global Distribution System]'s competitive presence."  (*Id.* ¶ 71.) Likewise, "the hotels want but are precluded from the benefits of choice . . . for their hotel content . . . ."  (*Id.* ¶ 70.)  "The hotels are forced into these exclusive dealing and tying arrangements because, in order to have their content displayed through the [Global Distribution Systems] (and, in turn, reach their network of [online travel agency] affiliates representing the vast bulk of online travel channels of distribution), they must use VFML's monopoly distribution platform, the only one used by the [Global Distribution Systems] and their [online travel agencies]."  (*Id.*)  As a result, "[t]he [Global Distribution Systems] and major [online travel agencies] and hotel groups have confirmed they cannot deal with competing distributors," and their agreements "are continually renewed and not open to rebidding."  (*Id.* ¶¶ 60, 72, 79.)  Pro Search has "never been asked to bid from the [Global Distribution Systems] or Pegasus," despite having "unsuccessfully tried numerous times to reach out and make offers."  (*Id.* ¶ 61.)

Pro Search further alleges that it had supplied content production, collection, management, and distribution services for a large number of Best Western hotels, but that VFML recently forced Best Western International to deal with VFML exclusively. (*Id.* ¶¶ 90, 91.)  "In effect, VFML has told hotels that unless they . . . work with VFML on an exclusive basis, they will lose all of their content distribution through VFML's vast network of locked-in distribution channels."  (*Id.* ¶ 93.)  VFML "act[ed] with the deliberate intention of injuring [Pro Search]" and "succeeded in causing [Pro Search] to lose its entire business relationship with Best Western," "despite the fact that Best Western

1 hotels had long expressed a strong preference for [Pro Search]'s platform and viewer,

2 which had been chosen over VFML's." (*Id.* ¶¶ 94, 96.)

3       Pro Search alleges that as a result of VFML's anticompetitive conduct, competitors

4 have been "effectively foreclosed from the distribution markets," and VFML has been able

5 to "charge supracompetitive prices." (*Id.* ¶¶ 18, 105-07.)

6       In its Second Amended Complaint, Pro Search asserts six claims: (1) attempted and

7 actual monopolization in violation of Section 2 of the Sherman Act; (2) unlawful exclusive

8 dealing arrangements in violation of Section 1 of the Sherman Act; (3) unlawful tying

9 arrangements in violation of Section 1 of the Sherman Act; (4) reverse "passing off" in

10 violation of Section 43(a) of the Lanham Act; (5) copyright infringement in violation of

11 the Copyright Act; and (6) intentional interference with contractual and prospective

12 economic relations.

13 **II.    Legal Standard**

14       When evaluating a Rule 12(b)(6) motion, the Court must accept as true all

15 allegations of material facts that are in the complaint and must construe all inferences in

16 the light most favorable to the non-moving party. *See Moyo v. Gomez*, 32 F.3d 1382, 1384

17 (9th Cir. 1994). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a

18 "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

19 R. Civ. P. 8(a)(2). Dismissal of a complaint for failure to state a claim is not proper where

20 a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."

21 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility

22 when the plaintiff pleads factual content that allows the court to draw the reasonable

23 inference that the defendant is liable for the misconduct alleged. The plausibility standard

24 is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

25 defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

26 (quoting *Twombly*, 550 U.S. at 556). As such, "[w]hen faced with two possible

27 explanations, only one of which can be true and only one of which results in liability,

28

1  plaintiffs cannot offer allegations that are 'merely consistent with' their favored

2  explanation but are also consistent with the alternative explanation." *In re Century*

3  *Aluminum Co. Securities Litigation*, 729 F.3d 1104, 1108 (9th Cir. 2013).  A complaint

4  must (1) "contain sufficient allegations of underlying facts to give fair notice and to enable

5  the opposing party to defend itself effectively," and (2) "plausibly suggest an entitlement

6  to relief, such that it is not unfair to require the opposing party to be subjected to the

7  expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th

8  Cir. 2011).  "Although for the purposes of a motion to dismiss [the Court] must take all of

9  the factual allegations in the complaint as true, [it] '[is] not bound to accept as true a legal

10  conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

11  550 U.S. at 555).  Moreover, the Supreme Court has cautioned against permitting antitrust

12  cases to proceed to discovery without a plaintiff demonstrating "plausibility" because of

13  the high cost of discovery in antitrust cases in particular.  *See Twombly*, 550 U.S. at 558

14  ("Thus, it is one thing to be cautious before dismissing an antitrust complaint in advance of

15  discovery, but quite another to forget that proceeding to antitrust discovery can be

16  expensive." (internal citation omitted)).

17          In considering the motion, the Court is limited to the allegations on the face of the

18  complaint (including documents attached thereto), matters which are properly judicially

19  noticeable, and "documents whose contents are alleged in a complaint and whose

20  authenticity no party questions, but which are not physically attached to the pleading."

21  *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds in*

22  *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

23  **III.    Discussion**

24          **A. Sherman Act Claims**

25          Plaintiff brings three claims under the Sherman Act.  Plaintiff alleges that VFML

26  has monopolized and attempted to monopolize the Product Markets in violation of

27  Section 2 of the Sherman Act.  (SAC ¶¶ 110-132.)  Plaintiff also alleges a violation of

28

1  Section 1 of the Sherman Act based on exclusive deals with Global Distribution Systems,

2  Pegasus, hotels, and online travel agencies, and based on unlawful tying arrangements with

3  these same entities.  (*Id*. ¶¶ 133-61.)

4  VFML moves to dismiss all of the Sherman Act claims on the ground that the

5  alleged geographic market is facially unsustainable and that no antitrust injury is alleged.

6  With respect to the individual Sherman Act claims, VFML moves to dismiss the exclusive

7  dealing claim on the grounds that the agreements with Global Distribution Systems and

8  Pegasus are easily terminable, of short duration, leave open alternative channels of

9  distribution, and do not restrict hotel images, and that the hotel and online travel agency

10  contracts are non-exclusive and do not prevent entities from using the services of another.

11  (Mot. at 1.)  VFML moves to dismiss the tying claims on the grounds that Pro Search has

12  failed to allege the linkage of two separate product markets, and that the Global

13  Distribution Systems, Pegasus, hotels, and online travel agencies were not coerced into

14  accepting the tied "product."  (*Id*.)  VFML moves to dismiss the monopolization and

15  attempted monopolization claim on the grounds that these agreements are non-exclusive

16  and are not tying arrangements, and that Plaintiff's claim is conclusory and fails to allege

17  harm to competition.  (*Id*. at 1-2.)

18  The Court finds that Pro Search has adequately pleaded a geographic market, has

19  adequately pleaded a claim for *de facto* exclusive dealing, has failed to plead a claim for

20  tying, has adequately pleaded a claim for monopolization or attempted monopolization,

21  and has adequately pleaded antitrust injury.  The Court addresses each in order.

## 1.  Relevant Markets

23  Pro Search's Sherman Act claims require it to establish market power in a "relevant

24  market," meaning a relevant product market and a relevant geographic market.  *See*

25  *Tanaka v. Univ. of S. California*, 252 F.3d 1059, 1063 (9th Cir. 2001).  "[S]ince the

26  validity of the 'relevant market' is typically a factual element rather than a legal element,

27  alleged markets may survive scrutiny under Rule 12(b)(6) subject to factual testing by

28

1  summary judgment or trial." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038,

2  1045 (9th Cir. 2010).  However, "a complaint may be dismissed under Rule 12(b)(6) if the

3  complaint's 'relevant market' definition is facially unsustainable." *Id*. at 1045.  The Ninth

4  Circuit has articulated several principles to guide this determination, including that the

5  relevant market must be defined by the product (as opposed to consumers of the product),

6  and that it "must encompass the product at issue as well as all economic substitutes for that

7  product." *Id*.

8       VFML argues that all of the antitrust claims should be dismissed "because the

9  alleged geographic market (the U.S.) is facially unsustainable."  (Mot. at 21.)[1]  "A

10  geographic market is an area of effective competition . . . where buyers can turn for

11  alternate sources of supply." *Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924

12  F.2d 1484, 1490 (9th Cir. 1991) (citations and internal quotation marks omitted).  VFML

13  argues that the United States is a facially unsustainable geographic market because VFML

14  is a Canadian company, and because the First Amended Complaint alleged that customers

15  outside the United States received services from a United States-based competitor.  (Mot.

16  at 21 (citing FAC ¶ 32).  (Mot. at 21.)  However, the geographic market need not include

17  supplier headquarter sites, and courts must instead consider "where sellers operate *and*

18  where purchasers can predictably turn for supplies." *E. I. du Pont de Nemours & Co. v.*

19  *Kolon Indus.*, 637 F.3d 435, 339, 447 (4th Cir. 2011).  The Court does not find the alleged

20  geographic market facially unsustainable, because buyers in the Product Markets might

21  predictably turn to alternatives in the United States—in particular, they might turn to Pro

22  Search, which is VFML's main competitor in the Product Markets.[2]  Moreover, whether

23

24  [1] VFML did not challenge the sufficiency of Pro Search's allegations with respect to the three
Product Markets.

25  [2] Another competitor with VFML, ICE Portal, settled an antitrust action with VFML and "no

26  longer distributes directly to the channels for hotel content distribution, but instead has an
agreement with VFML to use its distribution platform." (SAC ¶ 88.)  According to Pro Search,

27  "[a]fter ICE Portal settled with VFML, [Pro Search] became VFML's main remaining competitor
in the relevant markets."  (*Id*. ¶ 89.)

28

the alleged geographic market is ultimately a valid market is a factual issue and, based on the allegations in the Second Amended Complaint, not a basis to dismiss all of Pro Search's antitrust claims.  Accordingly, the Court finds that the geographic market is not facially unsustainable.

### 2.  Section 1 Exclusive Dealing Claim

Pro Search alleges that VFML has engaged in exclusive dealing arrangements in violation of Section 1 of the Sherman Act.  To state a claim under Section 1, a plaintiff must allege (1) a contract, combination, or conspiracy between two or more entities; (2) in unreasonable restraint of trade; that (3) affects interstate commerce.  *See* 15 U.S.C. § 1; *Am. Ad Mgmt., Inc. v. GTE Corp.*, 92 F.3d 781, 788 (9th Cir. 1996).  "An exclusive dealing arrangement is an agreement in which a buyer agrees to purchase certain goods or services only from a particular seller for a certain period of time."  *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 270 (3d. Cir. 2012) (citing Herbert Hovenkamp, *Antitrust Law* ¶ 1800a, at 3 (3d ed. 2011)).

"Generally, a prerequisite to any exclusive dealing claim is an agreement to deal exclusively. An express exclusivity requirement, however, is not necessary, because we look past the terms of the contract to ascertain the relationship between the parties and the effect of the agreement in the real world."  *Id.* (citations and internal quotation marks omitted); *see also United States v. Dentsply*, 399 F.3d 181, 189 (3d. Cir. 2005) ("economic realities rather than a formalistic approach must govern review of antitrust activity").  "Thus, *de facto* exclusive dealing claims are cognizable under the antitrust laws."  *ZF Meritor*, 696 F.3d at 270. (citations omitted).  "There is no set formula for evaluating the legality of an exclusive dealing agreement, but modern antitrust law generally requires a showing of significant market power by the defendant,  substantial foreclosure,  contracts of sufficient duration to prevent meaningful competition by rivals, and an analysis of likely or actual anticompetitive effects considered in light of any procompetitive effects."  *Id*. at 271 (citations omitted).  "Exclusive dealing will generally

1  only be unlawful where the market is highly concentrated, the defendant possesses

2  significant market power, and there is some element of coercion present."  *Id*. at 284

3  (citations omitted).

4        In the Court's previous order, the Court found that because the contracts with

5  Global Distribution Systems and Pegasus "are of relatively short duration and, crucially,

6  can be terminated upon short notice, they do not—by themselves—sustain the Sherman

7  Act claims."  (MTD Order at 8, Doc. 55 (citing 11 Areeda & Hovenkamp ¶ 1802g).)  The

8  Court found the reasoning of three prior cases persuasive:  *NicSand, Inc. v. 3M Co.*, 507

9  F.3d 442 (6th Cir. 2007); *Paddock Publications, Inc. v. Chicago Tribune Co.*, 103 F.3d 42

10  (7th Cir. 1996); and *SPX Corp. v. Mastercool U.S.A., Inc.*, No. 3:10 CV 1266, 2011 WL

11  2532889 (N.D. Ohio June 24, 2011).  (MTD Order at 8.)  The Court further stated that,

12  "while the case law does support the general proposition that a *de facto* exclusive dealing

13  arrangement can run afoul of the antitrust laws, Pro Search has not alleged anything

14  beyond the existence of the contracts to support its apparently broader '*de facto*

15  arrangement' theory."  (MTD Order at 8.)

16        In response, Pro Search added allegations that *de facto* exclusive dealing

17  arrangements exist between VFML and the Global Distribution Systems, Pegasus, hotels,

18  and online travel agencies, because VFML's monopoly makes dealing with VFML an

19  economic necessity and makes the cost of switching prohibitive.  (SAC ¶¶ 69-76.)  In

20  particular, Pro Search alleges that VFML has market power, that Pro Search has attempted

21  to make bids and offers but contracts "are continually renewed and not open to rebidding,"

22  that hotels and online travel agencies have been forced into dealing exclusively with

23  VFML, that VFML has recently used its market power to coerce at least one hotel group

24  into dealing exclusively with VFML, that VFML acquired or settled with its other

25  competitors, and that there has been substantial foreclosure of competition.

26  (SAC ¶¶ 32-33, 35-36, 39-40, 43-47, 61, 70-72, 86-96, 97-109, 138, 149, 150.)  Pro Search

27  asks the Court to consider these allegations as a whole in determining whether it has

28

pleaded a claim for *de facto* exclusive dealing.  (Opp'n at 6-7); *cf. City of Anaheim v. Southern California Edison Co*., 955 F.2d 1373, 1376 (9th Cir. 1992) (in determining whether Section 2 has been violated, "it would not be proper to focus on specific individual acts of an accused monopolist while refusing to consider their overall combined effect.").

VFML argues that Pro Search is alleging that "[Global Distribution Systems] and Pegasus prefer VFML's content over the offerings of competitors," and that this must be because VFML has a superior product.  (Mot. at 13-15 (citing SAC ¶ 69).)  However, Pro Search alleges that *it* has superior products.  (SAC ¶¶ 19-24.)  Despite Pro Search's superior products, the "cost of switching from VFML to another distributor, such as [Pro Search], are prohibitive" and Global Distribution Systems will not terminate their arrangements with VFML because "VFML would cut [Global Distribution Systems] off from access to the necessary VFML-controlled content and distribution platform." (SAC ¶¶ 69, 71.)  Consistent with this allegation, at least some agreements have been renewed beyond their initial term.  (SAC ¶ 60; *see also* Opp'n at 10.)

VFML also argues that it did not acquire its content inappropriately, that Pro Search has brought an antitrust claim instead of putting the time and resources into developing its own product, and that Pro Search "is asking [the Court] to equip [Plaintiff] with [VFML's] competitive advantage."  (Mot. at 14 (quoting *Seagood Trading Corp. v. Jerrico, Inc*., 924 F.2d 1555, 1572-73 (11th Cir. 1991).)  However, the Second Amended Complaint alleges that Pro Search has been in business several years and has or had business in the Product Markets.  The Second Amended Complaint also alleges that Pro Search "has been seriously weakened and marginalized" and "now faces looming elimination . . . due to the illegal and predatory actions of VFML," including *de facto* exclusive dealing.  (SAC ¶ 21.)

In addition, VFML argues that the agreements themselves do not foreclose relevant markets because they leave open alternative channels of distribution, and in any event many of the agreements do not affect the Global Distribution Systems' or Pegasus' ability

to source or display images.  (Mot. at 11.)  However, the fact that an alternative channel could theoretically be used does not mean that it actually is used, and a *de facto* exclusive dealing arrangement could prevent a potential alternative channel of distribution from actually being used.  *Cf. Omega Env. Int'l., Inc. v. Gilbarco, Inc*., 127 F.3d 1157, 1163 (9th Cir. 1997)  (noting that "[e]xisting companies, such as the service contractors that regularly sell and service petroleum dispensing equipment, can *and do* become authorized dispenser distributors." (emphasis added)).[3]  VFML also notes that language in one online travel agency agreement stating that the online travel agency "shall be entitled to continue displaying Hotel Moving Media from Other Rich Media Providers as it currently does" supports a finding that alternative channels of distribution remain open.  (Mot. at 11 (quoting Ex. U at 16-17, ¶ 6.1(b)).)  Nonetheless, the Court finds it premature to determine whether the agreements do in fact leave open alternative channels of distribution.  *See In re Ductile Iron Pipe Fittings Direct Purchaser Antitrust Litig.*, No. 12-711, 2013 WL 812143, *19 (D.N.J. Mar. 5, 2013) ("The question of whether the alleged exclusive dealing arrangements foreclosed a substantial share of the line of commerce is a merits question not proper for the pleading stage.").

     Based on the allegations discussed above, the Court finds that Pro Search has pleaded the existence of *de facto* exclusive dealing arrangements in the Photo Distribution Market and Rich Media Distribution Markets, under the guidance set forth in *Eaton*.  *See* 696 F.3d at 271; *see also Blue Sky Color of Imagination, LLC v. Mead Westvaco Corp*., CV 10-02175 DDP (ANx), 2010 WL 4366849, at *4 (C.D. Cal. Sept. 23, 2010) (distinguishing cases that were not decided under Rule 12(b)(6), and finding that allegations of *de facto* exclusive dealing related to bundling arrangement were not conclusory); *cf. Masimo Corp v. Tyco Health Care Group, L.P.*, No. CV 02-4770 MRP, 2004 WL 5907538, at *16 (C.D. Cal. June 10, 2004) (determining whether arrangements

---

[3] The *Omega* decision, which concerned a judgment following trial, did not address *de facto* exclusivity.

were de facto exclusive presented genuine issues of material fact inappropriate for

summary judgment).[4]

Accordingly, the Motion is denied with respect to the exclusive dealing claim.

### 3.  Section 1 Tying Claim

"Tying exists when a seller refuses to sell one product unless the buyer also

purchases another."  *Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1411 (9th Cir. 1991).

"To prove an illegal tie, a party must show 1) a tying of two distinct products or services,

2) sufficient economic power in the tying product market to affect the tied market, and 3)

an effect on a substantial amount of commerce in the tied market."  *Id.*  "It is well settled

that there can be no unlawful tying arrangement absent proof that there are, in fact, two

separate products, the sale of one (i.e., the tying product) being conditioned upon the

purchase of the other (i.e., the tied product)."  *Krehl v. Baskin-Robbins Ice Cream Co.*, 664

F.2d 1348, 1352 (9th Cir. 1982).  "The existence of distinct products depends upon 'the

character of the demand for the two items.'"  *Rick-Mik Enterprises, Inc. v. Equilon

Enterprises LLC*, 532 F.3d 963, 975 (9th Cir. 2008) (citing *Jefferson Parish Hosp. Dist.

No. 2 v. Hyde*, 466 U.S. 2, 19 (1984)).  "There must be 'a sufficient demand for the

purchase of [the tied product] separate from [the tying product] to identify a distinct

product market[.]'"  *Id.* (quoting *Jefferson Parish*, 466 U.S. at 21).

Pro Search alleges similar tying arrangements across hotels, online travel agencies,

Global Distribution Systems and Pegasus.  For hotels, "VFML has conditioned (tied): (a)

its new or continued distribution of digital photographs and rich content and (b) access to

its platform and vast network of channels for distribution (the tying services over which

VFML has monopoly power) to the *exclusive distribution of all content* (the tied service)."

(SAC ¶ 78 (emphasis in original).)  For online travel agencies, "VFML conditions (or ties)

---

[4] As the Court finds that Pro Search has sufficiently pleaded a *de facto* exclusive dealing claim, the Court makes no finding as to whether Pro Search has pleaded a claim based on the agreements themselves.

the [online travel agencies'] access to VFML's hotel content and Digital Asset

Management technology platform development (the tying products) to acceptance of

VFML as the exclusive provider of hotel content (the tied product)."  (*Id.* ¶ 79.)  For

Global Distribution Systems and Pegasus, "VFML gives a royalty-free, paid-up license to

*distribute* hotel content as consideration to secure exclusivity to those rights."

(*Id.* ¶¶ 81-85 (emphasis in original).)

Pro Search's tying claim fails because the tying product and tied product—the

distribution of content and exclusive distribution of that content, respectively—are not

separate products.  To the extent any contracts do have exclusivity terms, or discounts

related to exclusivity, these terms are not for separate products.  (*Id.* ¶¶ 48-49.)  Instead,

Pro Search has recharacterized its exclusive dealing claim as a tying claim, but "simply

characterizing an exclusive dealing arrangement as a tying arrangement does not

necessarily make it one."  *See Waldo v. North American Van Lines, Inc.*, 669 F. Supp. 722,

731 (W.D. Pa. 1987)).

Accordingly, the claim is dismissed.

### 4. Section 2 Monopolization and Attempted Monopolization Claim

Pro Search alleges actual and attempted monopolization under Section 2 of the

Sherman Act.  "To succeed on its claim for actual monopolization under § 2, [Pro Search]

must prove [VFML]: (i) possessed monopoly power in the relevant markets; (ii) willfully

acquired or maintained its monopoly power through exclusionary conduct; and (iii) caused

antitrust injury."  *Am. Prof. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal &

Prof. Pubs, Inc.*, 108 F.3d 1147, 1151 (9th Cir. 1997).  "[T]o demonstrate attempted

monopolization a plaintiff must prove (1) that the defendant has engaged in predatory or

anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous

probability of achieving monopoly power."  *Cascade Health Solutions v. PeaceHealth*,

515 F.3d 883, 893 (9th Cir. 2007) (quoting *Spectrum Sports, Inc. v. McQuillan*, 506 U.S.

447, 456, (1993); *Amarel v. Connell*, 102 F.3d 1494, 1521 (9th Cir. 1996).

VFML does not dispute that it maintains monopoly power in the relevant markets, and instead argues that Pro Search has failed to allege any anticompetitive conduct.  (Mot. at 17-18.)  VFML argues that Pro Search's "allegations of an 'anticompetitive scheme and plan' thus rise—and fall—with the exclusive-dealing and tying claim."  (*Id*. at 18.)  For the reasons stated above, the Court finds that Pro Search has adequately alleged a claim for *de facto* exclusive dealing, and therefore has alleged anticompetitive conduct.

Accordingly, the motion is denied with respect to this claim.

### 5.  Antitrust Injury

VFML also argues that Pro Search has failed to plead antitrust injury.  (Mot. at 19-21.)  "It is well established that the antitrust laws are only intended to preserve competition for the benefit of consumers."  *Am. Ad Management, Inc. v. Gen. Telephone Co. of California*, 190 F.3d 1051, 1055 (9th Cir. 1999).  There are four requirements for antitrust injury: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent."  *Id*.

The Second Amended Complaint alleges that "the [Global Distribution Systems], Pegasus, [online travel agencies], and hotels 'have confirmed to [Pro Search] that they cannot deal with competing distributors, such as [Pro Search], due to their exclusive arrangements with VFML'" and that Pro Search "has unsuccessfully tried numerous times to reach out and make offers" to the Global Distribution Systems and Pegasus.  (SAC ¶¶ 18, 61, 72.)

VFML recognizes these allegations in its Motion, but nonetheless argues that Pro Search fails to allege that it "ever made any offer to the [Global Distribution Systems], Pegasus, hotels, or [online travel agencies] that, but for VFML's allegedly anticompetitive conduct, would have convinced those entities to use [Pro Search]'s services."  (Mot. at 20 (quoting SAC ¶ 18).)  In addition to the above allegations, Pro Search has alleged that it offers superior products and services, but that "[d]espite these designations and superior

1    products and services, [Pro Search] has been seriously weakened and marginalized, and

2    now faces looming elimination in the relevant markets in which it attempts to compete

3    with VFML due to the illegal and predatory actions of VFML" due in part to *de facto*

4    exclusive arrangements.  (SAC ¶¶ 21, 140-41.)

5         VFML also argues that "Plaintiff has not identified a single customer, deal, or dollar

6    it has lost as a result of any of the [Global Distribution Systems], Pegasus, hotel, or [online

7    travel agency] contracts," but then notes that Plaintiff has in fact pleaded that it lost a

8    major customer through allegedly anticompetitive conduct.  (Mot. at 20-21;

9    SAC ¶¶ 90-96.)

10        The Court finds VFML's arguments unavailing, and that Pro Search has sufficiently

11   pleaded antitrust injury.

12            **B.  Lanham Act Claim**

13        The Court previously declined to dismiss Plaintiff's Lanham Act claim because

14   "[b]ased upon the allegations in the First Amended Complaint, it is unclear whether Pro

15   Search is more like the 'printer [/] publisher' or the 'author' (in McCarthy's language) of

16   the digital images and rich media it distributes."  (MTD Order at 13.)  In making this

17   finding, the Court extensively discussed *Dastar Corp. v. Twentieth Century Fox Film*

18   *Corp.*, 539 U.S. 23 (2003) and noted the Supreme Court's concern about creating a

19   "mutant species of copyright law."  (MTD Order at 12 (quoting *Dastar*, 539 U.S. at 34).)

20        Pro Search argues that to "clear up" this ambiguity in its allegations, it changed the

21   allegations in its Lanham Act claim from "misappropriat[ing] hotel photo images and rich

22   media created by [Pro Search]" to "missappropriat[ing] hotel photo images and rich media

23   created *and produced* by [Pro Search]."  (*Compare* First Amended Compl. ("FAC") ¶ 100,

24   Doc. 30, *with* SAC ¶ 168 (emphasis added).)  However, Pro Search also added a copyright

25   infringement claim regarding the same works as the Lanham Act claim.[5]  VFML argues

26   _____

27   [5] Although in its Opposition Pro Search "withdrew" its copyright claim, it was because
        (footnote continued)

28

16

that this is a basis to dismiss the Lanham Act claim.  (Mot. at 23-24.)  Pro Search does not

address this issue in its Opposition.

The new copyright infringement claim alleges that "VFML has misappropriated [Pro Search]'s copyrighted photographic works and engaged in unauthorized use and direct copying of [Pro Search]'s copyrights by causing [Pro Search]'s photographic works to be displayed on various websites."  (SAC ¶ 180.)  Pro Search further alleges that "VFML's unlawful acts have been and are interfering with and undermining [Pro Search]'s ability to market and distribute its own original photographic works . . . ."  (*Id*. ¶ 181.)  The allegations in the Lanham Act claim itself confirm that the issue is whether VFML is the "creator of the underlying work," as it is alleged that VFML has deceived consumers into believing that VFML is "the source and/or creator of the images/rich media, instead of [Pro Search]."  (*Id*. ¶ 168); *Dastar*, 539 U.S. at 31-32.[6]  Pro Search does not address how the addition of its copyright claim affects its Lanham Act claim, despite the fact that VFML moves to dismiss on this ground.  (Mot. at 23.)  The Court agrees with VFML that the addition of the copyright claim resolves any ambiguity about the Lanham Act claim and makes clear that it should be dismissed under *Dastar*.  *See Lahiri v. Universal Music and Video Distribution Corp*., 606 F.3d 1216, 1219, 1221 (9th Cir. 2010) (noting district court dismissed Lanham Act claim under *Dastar* after plaintiff registered a copyright and

---

"it is unclear what the confirmation status of [the copyright applications] is and whether they have been processed and accepted," not because Pro Search does not believe it is the author of the works.  (Opp'n at 25); *see also Dastar*, 539 U.S. at 35 ("Reading 'origin' in § 43(a) to require attribution of uncopyrighted materials would pose serious practical problems.").

[6] Although Pro Search is in some sense the producer and the author, in that it sells products that are for the distribution of images (see SAC ¶¶ 31-41 (defining Product Markets)), Pro Search's claim is that VFML misrepresents the creator of the images, not that VFML misrepresents the product itself (i.e., the management and distribution of images).  *Cf. Martin v. Walt Disney Internet Group*, No. 09CV1601-MMA (POR), 2010 WL 2634695, at *8 (S.D. Cal. June 30, 2010) ("Under *Dastar*, the 'good' at issue in this case is [Defendant's magazine], since the magazine itself is the product offered for sale to the public.  Plaintiff's photograph constitutes the 'idea[s], concept[s], or communication[s] embodied within those goods,' which according to *Dastar*, are clearly not protected under Section 1125(a) of the Lanham Act.").

1  brought a copyright infringement claim on the same works covered by the Lanham Act

2  claim).

3          Accordingly, the Lanham Act claim is dismissed with prejudice.

4          **C. Copyright Infringement Claim**

5          In its Opposition, Pro Search "withdr[ew], without prejudice, its copyright claim

6  herein, at least in the interim."  (Opp'n at 25.)

7          Accordingly, the copyright infringement claim is dismissed.

8          **D. Intentional Interference with Prospective Economic Advantage and**

9                  **Existing Contractual Relations Claims**

10          Plaintiff's sixth cause of action contains two separate claims: intentional

11  interference with prospective economic advantage and intentional interference with

12  existing contractual relations.  The Court finds that Pro Search adequately pleaded both

13  claims.

14          **1.  Intentional Interference with Prospective Economic Advantage**

15          "It is firmly established that the requisite elements for proving the tort of

16  intentional interference with prospective economic advantage are (1) an economic

17  relationship between the plaintiff and some third party, with the probability of future

18  economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3)

19  intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual

20  disruption of the relationship; and (5) economic harm to the plaintiff proximately caused

21  by the acts of the defendant."  *San Francisco Design Center Assoc. v. Portman Cos*., 41

22  Cal. App. 4th 29, 40 (Ct. App. 1995) (citation and internal quotation marks omitted).

23          VFML does not argue that Pro Search fails to allege any particular element of this

24  claim, but rather that there is a lack of causation as Pro Search's contract with Best

25  Western International was not terminated until nearly a year after the alleged conduct.

26  (Mot. at 24.)  However, VFML does not argue that Best Western International could in fact

27  have terminated the contract earlier, and Best Western International may not have been

28

able to do so.[7]  VFML also argues that the allegations of threats and coercion are implausible and conclusory.  (*Id.*; Reply at 21.)  The Court disagrees, based on the allegations set forth in paragraphs 90-96 of the Second Amended Complaint.

VFML also argues that the claim is barred by the affirmative defense of competition privilege.  (Mot. at 25.)  "It is . . . settled that an affirmative defense to the tort of interference with prospective economic advantage is the privilege of competition." *Portman Cos.*, 41 Cal. App. 4th at 40 (citation omitted).  The privilege has been adopted in California as articulated by Restatement Second of Torts section 768: "(1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if: [¶] (a) the relation concerns a matter involved in the competition between the actor and the other and [¶] (b) the actor does not employ wrongful means and [¶] (c) his action does not create or continue an unlawful restraint of trade and [¶] (d) his purpose is at least in part to advance his interest in competing with the other."  *See id.* (alterations in original).  The Court finds that the competition privilege does not bar Pro Search's claim at this stage of the litigation, because Pro Search has sufficiently alleged *de facto* exclusivity.  *See id.* at 42-43 ("The defendant's conduct must be independently actionable.").

Accordingly, the Motion is denied with respect to the claim for intentional interference with prospective economic advantage.

### 2.  Intentional Interference with Existing Contractual Relations

The elements of the tort of intentional interference with existing contractual relations are "(1) a valid contract between plaintiff and a third party; (2) defendant's

---

[7] Indeed, VFML does not argue that its own contract with Best Western International is terminable at will, unlike its agreements with certain other hotels.  (*See* Mot. at 5-6 (Hilton contract "can be terminated for any reason upon 30-days' notice"; IHG contract "can be terminated for any reason upon 90-days' notice with payment of [fees].").)

1  knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or

2  disruption of the contractual relationship; (4) actual breach or disruption of the contractual

3  relationship; and (5) resulting damage."  *Pac. Gas & Elec. Co. v. Bear Stearns & Co*., 50

4  Cal. 3d 1118, 1126 (1990).

5       VFML argues that this claim does not sufficiently allege causation and is

6  implausible for the same reasons as the intentional interference with prospective economic

7  advantage claim, which the Court has already rejected.

8       VFML also argues this claim is barred under the competition privilege.  (Mot. at

9  25.)  However, the Court has found that the privilege is not applicable at this stage.

10  Moreover, "[t]he competitive privilege clearly is inapplicable to interference with an

11  existing contract unless the contract is terminable at will."  *Portman Cos*., 41 Cal. App. at

12  40-41.  It is not clear that the contract was terminable at will—indeed, the fact that Best

13  Western International waited approximately a year to terminate the contract suggests that it

14  may not have been—and the Court finds that this is an alternative basis not to dismiss the

15  claim under the competition privilege.

16       Accordingly, the Motion is denied with respect to the claim for intentional

17  interference with contractual relations.

18  **IV.   Conclusion**

19       For the foregoing reasons, the Motion is GRANTED IN PART and DENIED IN

20  PART.  Pro Search's tying claim under Section 1 of the Sherman Act and its copyright

21  infringement claim are dismissed without prejudice.  Pro Search's Lanham Act claim is

22  dismissed with prejudice.

23

24  DATED: December 2, 2013  _____

JOSEPHINE L. STATON

25                           JOSEPHINE L. STATON
                    UNITED STATES DISTRICT JUDGE

26

27

28